[Cite as *State v. Sexton*, 2022-Ohio-1461.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

LARRY J. SEXTON, JR.,

        Defendant-Appellant.

**CASE NO. 2021-G-0027**

Criminal Appeal from the
Chardon Municipal Court

Trial Court No. 2021 CRB 00621

---

**O P I N I O N**

Decided: May 2, 2022
Judgment: Affirmed

---

*Steven E. Patton*, Chardon Police Prosecutor, Patton & Lee, LLC, 7160 Chagrin Road, Suite 155, Chagrin Falls, OH 44023 (For Plaintiff-Appellee).

*Rick L. Ferrara*, 2077 East Fourth Street, Second Floor, Cleveland, OH 44114 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}    Appellant, Larry J. Sexton, Jr. ("Mr. Sexton"), appeals from his conviction and sentence in the Chardon Municipal Court after a jury found him guilty of domestic violence, aggravated menacing, and disorderly conduct, following a series of threatening messages in which he terrorized the victim, his sister, "T.G.," causing her to fear for her life and those of her family.

{¶2}    Mr. Sexton raises two assignments of error on appeal. First, he contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the state presented insufficient evidence of domestic violence. Mr. Sexton asserts the journal entry offered by the state as evidence of his prior conviction did not meet the elements of *State*

*v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, and was dated one year after sentencing. Further, Mr. Sexton asserts there was insufficient evidence of "imminent" harm. Finally, he contends the manifest weight of the evidence did not warrant a conviction for domestic violence or aggravated menacing.

{¶3} After a careful review of the record and relevant law, we find Mr. Sexton's assignments of error to be without merit. Firstly, the state's exhibit of Mr. Sexton's prior domestic violence conviction comports with the requirements of *State v. Gwen*, i.e., the sentencing judgment entry contains the fact of conviction the sentence, and it was signed by the trial judge and time-stamped by the clerk. In addition, as evidenced by the time-stamped judgment entry, the judgment entry was not dated a year after his sentencing but the day he was sentenced. The state also introduced sufficient evidence that the victim had a reasonable belief of imminent harm: she testified that she was in fear for her and her family's safety to the extent that she sought protection from the police, obtained a temporary protection order ("TPO"), and sought a civil protection order ("CPO"). She lived under a shroud of fear from Mr. Sexton's threatening and violent communications, which escalated to threats that he would kill her by strangulation. Finally, the manifest weight of the evidence more than supports the jury's verdict. The jury was free to believe the state's version of events and that Mr. Sexton's threats via electronic communication were more than "hypothetical rants."

{¶4} The judgment of the Chardon Municipal Court is affirmed.

## Substantive and Procedural History

{¶5} In late August 2021, Mr. Sexton was charged in the Chardon Municipal Court with three counts: aggravated menacing, a first-degree misdemeanor, in violation

2

of R.C. 2903.21(A); domestic violence, a second-degree misdemeanor, in violation of R.C. 2919.25(C); and disorderly conduct, a minor misdemeanor, in violation of R.C. 2917.11(A)(1). Mr. Sexton's charges arose from a series of threatening and violent communications with the victim, his sister, T.G. The court also issued a TPO for T.G. while the matter was pending.

{¶6} The defense filed a motion in limine to prohibit the introduction of any of the underlying facts related to Mr. Sexton's prior domestic violence conviction other than the judgment of conviction.

{¶7} Prior to the start of trial, the trial court asked defense counsel if she wished to add anything to her motion in limine. Defense counsel responded that she discussed the documents from Mr. Sexton's prior domestic violence conviction that she found prejudicial with the prosecutor, and he agreed to not include them. She clarified for the court that they discussed using only two pages - the "cover page from Cuyahoga, from the Municipal Court, as well as the conviction" - to establish the fact of the prior conviction (also later referred to as "Plaintiff's Exhibit 3"). Finding the parties agreed to stipulate to the facts of the underlying conviction, the court granted the motion in limine.

{¶8} The case proceeded to a one-day jury trial in which the victim, and the investigating officer, Deputy Gary Kracker ("Deputy Kracker") of the Geauga County Sheriff's Office, testified for the state.

{¶9} T.G., Mr. Sexton's older sister by seven years, testified their mother died in December 2002 and their father passed in August 2017. T.G. testified that their "dad was a central part of [Mr. Sexton's] life, and helping him through life." After he passed, T.G. tried to help him by making sure he had rides to his doctor appointments and to the store

3

to get food.  She informed the jury that Mr. Sexton has a history of substance abuse and mental health issues and went to several rehabilitation facilities.  She communicated with Mr. Sexton mostly through social media applications such as Facebook.

{¶10} She described his messages for the jury:  "Um, [Mr. Sexton] liked to rant. He would rant a lot of things that there were happening in his life that were bad.  And he often times would blame everyone else for those issues, including me on all of them.  So that was ranting.  And I tolerated that to a point.  But then in July, they just became very threatening.  At that point, he was no longer just ranting.  It was – it was just totally changed, and it was becoming violent towards me."

{¶11} T.G. then read various messages from Mr. Sexton to the jury, which included threats of violence, degrading name-calling, and threats of litigation, which escalated to death threats to her and her immediate family, including her children.  T.G. felt "[t]here's just so much hate towards me, and that I am in danger from him.  He wants to hurt me. * * * I believe that he would have shot me."  She described one of his messages as "vicious":  "[h]e's vicious and could care less what he does to me and how he hurts me and doesn't see me as even a human."  T.G. was scared and "wanted to be in a safe place."  After Mr. Sexton sent her a message about "wanting to put a belt around my neck and to watch my eyes pop out that I had had it.  I realized at that point that his obsession with this has gone too much, and that I needed help and protected.  And that's when I went directly to the Sheriff."

{¶12} T.G. testified that she filed a written statement with the Geauga County Sheriff's Department and obtained a TPO.  She also filed for a CPO in the Geauga County Court of Common Pleas.

4

{¶13} Deputy Kracker testified that he took T.G.'s written statement when she came to the Sheriff's Office. He investigated the matter and amended the charges to aggravated menacing.

{¶14} At the close of the state's case, the state offered its exhibits into evidence, specifically "Plaintiff's Exhibit 3" - a two-page exhibit consisting of the Cuyahoga Falls Municipal Court Criminal Case summary page and the judgment of conviction and sentence for domestic violence. In a confusing colloquy between defense counsel and the prosecutor, apparently based on pre-trial discussions, defense counsel did not object to Exhibit 3; rather, she agreed to stipulate to the authenticity of the certified copy of Mr. Sexton's prior conviction for domestic violence but would not stipulate to its admissibility. The stipulation of the prior conviction would elevate Mr. Sexton's domestic violence charge from a fourth-degree misdemeanor to a second-degree misdemeanor.

{¶15} The defense made a Crim.R. 29 motion for acquittal based on insufficient evidence as to the element of "imminent physical harm" for the charges of domestic violence and aggravated menacing. The defense argued there was no evidence Mr. Sexton was anywhere near T.G. where he could cause imminent physical harm. The defense also argued that evidence of Mr. Sexton's prior conviction was not properly before the jury. That evidence was not admitted nor was a stipulation as to the element of a prior domestic violence conviction presented to the jury.

{¶16} The trial court first addressed Plaintiff's Exhibit 3, noting that it had not been admitted in the state's case in chief. As already noted, there had been a pretrial stipulation that language would be redacted from the prior conviction document and "other paper work" that included the underlying facts of the prior case would not come to the

5

jury's attention. Apparently, the state believed the defense had stipulated to the prior conviction.

{¶17} The trial court held in abeyance its ruling on Plaintiff's Exhibit 3 and overruled the Crim.R. 29 motion, finding that not all of Mr. Sexton's text and Facebook messages were from another city. Mr. Sexton was homeless, and T.G. received them in Auburn Township. T.G. testified that on the day before she filed her statement with the Sheriff's Office, she received a text about a "belt around her neck" and that she could not get the visual out of her head. The trial court found that was sufficient evidence of imminent physical harm to send the case to the jury.

{¶18} The trial court subsequently admitted the Plaintiff's Exhibit 3 for the jury's consideration, finding the prior conviction had been stipulated to "after a motion in limine hearing." The defense renewed its objection.

{¶19} The defense called no witnesses and moved for the admission of defense exhibits.

{¶20} The jury returned guilty verdicts on all counts. Before the trial court proceeded to sentencing, the defense renewed its Crim. R. 29 motion as to the domestic violence charge, arguing there was no evidence that the victim was in any imminent danger because Mr. Sexton was thirty minutes away from the victim's location. The trial court overruled the motion, stating that "imminent danger was a fact for the jurors to decide" and that "at any given time that the threats were made we would not know the exact location. [Mr. Sexton] could have been on the street next to his sister * * *."

## The Sentencing Hearing

{¶21} At the sentencing hearing, after Mr. Sexton spoke on his own behalf, the court noted that it had ordered certain bond conditions, which included assessments of Mr. Sexton's risk of reoffending, substance abuse, and mental health. Mr. Sexton, however, refused to participate. Mr. Sexton also rejected the court's sentence of a reduced jail term and probation because he did not want to be subject to the conditions of probation. Accordingly, after ensuring Mr. Sexton preferred the longer jail term, the court imposed 180 days in jail on the count of aggravated menacing to be served consecutively to a 90-day jail sentence on the count of domestic violence.

{¶22} Mr. Sexton now appeals, raising two assignments of error:

{¶23} "[1.] The state of Ohio presented insufficient evidence of domestic violence."

{¶24} "[2.] The manifest weight of the evidence did not warrant conviction for domestic violence or aggravated menacing."

## Sufficiency of the Evidence

{¶25} In his first assignment of error, Mr. Sexton contends that the state presented insufficient evidence of domestic violence, specifically as to his prior offense and the element of "imminent harm."

{¶26} In reviewing a challenge to the sufficiency of the evidence, an appellate court views the evidence in a light most favorable to the prosecution. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is "'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'"

7

*State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.*

{¶27} "In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*" *State v. Carter*, 2017-Ohio-7501, 96 N.E.3d 1046, ¶ 95 (7th Dist.), *appeal not allowed*, 151 Ohio St.3d 1515, 2018-Ohio-365, 90 N.E.3d 952. *See also State v. Cooper*, 11th Dist. Ashtabula No. 2019-A-0090, 2020-Ohio-3559, ¶ 5-6.

### Prior Conviction

{¶28} Mr. Sexton contends that the trial court failed to prove his prior conviction, which was necessary to elevate his domestic violence charge from a fourth-degree misdemeanor to a second-degree misdemeanor. He argues that the journal entry of his conviction does not meet all of the elements of a conviction under *Gwen*, *supra*, and that it was dated one year after he was sentenced.

{¶29} The state may prove a past conviction pursuant to R.C. 2945.75(B)(1), which provides, "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." When proving a past conviction pursuant to R.C. 2945.75(B)(1), the judgment entry must comply with Crim.R. 32(C). *Gwen* at ¶ 23.

8

Case No. 2021-G-0027

To comply with Crim.R. 32(C), "the judgment entry must set forth (1) the fact of a conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Id.*; *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 10.

{¶30} The state offered a two-page exhibit pursuant to the parties' agreement during a pretrial motion in limine hearing that the exhibit would contain the Cuyahoga Falls Municipal Court criminal case summary and the judgment entry of Mr. Sexton's conviction and sentence, omitting any reference to the facts underlying the conviction (Plaintiff's Exhibit 3).

{¶31} A review of the second page of Plaintiff's Exhibit 3 reveals the judgment entry complies with Crim.R. 32(C). It sets forth that a jury found (1) Mr. Sexton guilty of domestic violence, in violation of R.C. 2919.25 (fact of a conviction); (2) Mr. Sexton was sentenced to 180 days in jail, with 150 days suspended, provided he followed certain conditions (the sentence); (3) it was signed by the trial judge (judge's signature); and (4) was time stamped by the clerk of the Cuyahoga Falls Municipal Court on June 14, 2001 (the time stamp indicating entry upon the journal by the clerk).

{¶32} Further, contrary to Mr. Sexton's assertion, he was not sentenced over a year later, but several weeks after a jury found him guilty. Perhaps Mr. Sexton was confused since the first page of the exhibit, i.e., the court's criminal case summary, notes his probation was terminated a year later. In addition, the pre-printed section on the summary where the details of the sentence should be inserted was left blank. In any case, that does not impact our analysis of the sentencing judgment entry.

9

{¶33} We find the sentencing entry from Mr. Sexton's prior conviction properly complies with *Gwen*, *supra*, and does not indicate he was sentenced "over a year later." Thus, the state admitted sufficient evidence to prove his prior conviction, and this portion of Mr. Sexton's assignment of error is overruled.

**Imminent Harm**

{¶34} Mr. Sexton also argues that the state failed to introduce sufficient evidence of "imminent harm" because none of his "comments" had any temporal element and were otherwise couched in the context of a hypothetical circumstance.

{¶35} Mr. Sexton was convicted of domestic violence in violation of R.C. 2919.25(C), which states, "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶36} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶37} "Family or household member" includes " * * * another person related by consanguinity or affinity to the offender." R.C. 2919.25(F)(1)(a)(ii).

{¶38} "'The victim's state of mind is an essential element of domestic violence under R.C. 2919.25(C). * * * "[T]here must be some evidence either that a victim stated, or that from other evidence it could be inferred, that the victim thought that the accused would cause imminent physical harm."'" *Cooper*, *supra*, at ¶ 14, quoting *State v. South*, 2d Dist. Champaign No. 2017-CA-34, 2018-Ohio-4146, ¶ 13, quoting *Hamilton v. Cameron*, 121 Ohio App.3d 445, 449, 700 N.E.2d 336 (12th Dist.1997).

10

{¶39} "Imminent" is defined as "1. (Of a danger or calamity) threatening to occur immediately; dangerously impending * * *. 2. About to take place * * *." *Black's Law Dictionary*, imminent (11th Ed.2019).

{¶40} The state introduced evidence that T.G. was fearful for her life and that of her immediate family, including her sons. T.G. testified that Mr. Sexton's escalating threats and violent communications caused her physical stress and fear. She described one of these intimidating texts as "[h]e took a picture of himself in a mask, like a black mask and hoodie, and then to intimidate me, he just says. Boo. LOL." She described her actions after receiving the message as follows: "I went and sat in my safe place, which is the out house." After Mr. Sexton sent her a message stating, "Your brother may be smarter than you ever knew. Guess we will find out soon. I'm free to roam the country, LOL," T.G. stated, "That's when I went to my out house and just cried and tried to find peace and hid. That's where I would hide, and my family knew where I was hiding." When T.G. received a message from Mr. Sexton "wanting to put a belt around my neck and to watch my eyes pop out," T.G. stated, "It was just so visual and so graphic and so horrible that I had had it. I realized at that point that his obsession with this has gone too much, and that I needed help and protected. And that's when I went directly to the Sheriff." T.G. further testified as to Mr. Sexton's history of substance abuse, mental health issues, and instability.

{¶41} As we already noted, in determining the "imminent danger of physical harm" element, the critical inquiry is whether the proof fully evidences a reasonable belief by the victim that the accused will cause imminent physical harm. *State v. McClelland*, 10th Dist. Franklin No. 01AP-630, 2002 WL 356306, *5 (Mar. 7, 2002). T.G.'s testimony combined

11

with the exhibits of Mr. Sexton's threatening communications are sufficient evidence from which a jury could find that T.G. reasonably believed Mr. Sexton would cause her imminent physical harm.

**{¶42}** Mr. Sexton argues that "imminent" equates to a temporal element of physical harm. We disagree. It was clear from T.G.'s testimony that she was scared for her safety and that she believed Mr. Sexton intended to cause her harm.

**{¶43}** In *State v. Baker* 12th Dist. Butler No. CA2020-08-086, 2021-Ohio-272, the victim waited several days to report a threatening text message to the police. *Id.* at ¶ 19. The Twelfth District explained that this did not vitiate the fact that the victim feared for her life at the time the appellant threatened her. *Id.* Similar to these circumstances, "the passage of time between the threat and when the victim reported it does not mean that she lacked the requisite belief that [the appellant] would cause her imminent physical harm. She feared for her life upon receiving the threat and remained 'scared,' which prompted her to seek protection." *Id. See also State v. Tackett*, 4th Dist. Jackson No. 04CA12, 2005-Ohio-1437, ¶ 15, *rev'd and remanded on other grounds* (the fact that the victim went to the police may serve as evidence that demonstrates the victim's belief that physical harm was imminent).

**{¶44}** There is also no indication in the record that T.G.'s fear subsided. Quite to the contrary, T.G.'s fear prompted her to seek a TPO in this case, as well as a CPO from the Geauga County Court of Common Pleas. She continued to check Mr. Sexton's Facebook "[b]ecause I felt threatened, and I needed in my mind to keep track of him. I needed to know where he was at, what he was thinking. I, you know, and then I would block him, then I would unblock him and look again. And it was just my way of dealing

12

with the situation, and in my mind, trying to protect me and my family." When asked why she continued to receive messages from Mr. Sexton, she testified that she "needed to know his state of mind, where he was at. He had already said he wanted to kill me numerous times and hurt my kids. I just wanted to know where he was at and what he was doing, and what he was thinking."

{¶45} Mr. Sexton argues that his threats were "entirely hypothetical, not imminent, and based on a fantasy of future redemption for his abandonment by T.G." due to his homeless status. He argues that *State v. Collie*, 108 Ohio App.3d 580, 671 N.E.2d 388 (1st Dist.1996), is persuasive because in that case the appellant's threat was conditional and there was nothing specific in regard to the appellant's past threats, i.e., no dates, places, and specific descriptions of what happened. *Id.* at 585. Thus, the First District found the evidence was insufficient to prove the victim's belief that harm was imminent because there was only a conditional threat and because the trial court had sustained an objection to the state's attempt to develop any specificity as to the prior acts of the appellant. *Id.* Thus, the issue in *Collie* was the admissibility of prior acts evidence combined with a conditional threat, which is a situation markedly different from this case.

{¶46} In this case, Mr. Sexton made a series of threatening communications, which escalated to threats of killing the victim and her immediate family. The state presented sufficient evidence through testimony of the victim and the investigating officer, as well as records of Mr. Sexton's communications, from which a jury could find T.G. had a reasonable belief that Mr. Sexton intended to cause her imminent physical harm. His threats were not conditional. They were intimidating and created such an aura of fear over the victim that she frequently hid in her "safe place," suffered physical distress that

13

led to hospitalization, filed a police report, and pursued a TPO in this case as well as a CPO. There is no question that because of Mr. Sexton's threats, she had a reasonable belief under the circumstances that physical harm to herself and her immediate family was "imminent."

**{¶47}** Mr. Sexton's first assignment of error is without merit.

### Manifest Weight of Evidence

**{¶48}** In Mr. Sexton's second assignment of error, he contends, without citing any case law in support, that the manifest weight of the evidence does not warrant a conviction for domestic violence or aggravated menacing. More specifically, he contends his threats were hypothetical rants; that he never physically presented himself at any time to T.G.; and that his comments were sent only by electronic messaging.

**{¶49}** When reviewing whether a conviction is against the manifest weight of the evidence, we must "examine whether the evidence produced at trial 'attains the high degree of probative force and certainty required of a criminal conviction.'" *State v. Tibbetts*, 92 Ohio St.3d 146, 163, 749 N.E.2d 226 (2001), quoting *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998). In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* "'Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

14

{¶50} As our review of the evidence reveals, the manifest weight of the evidence supports the jury's verdict that Mr. Sexton, by threat of force, knowingly caused T.G. to believe that he would cause imminent physical harm to her and/or her immediate family (domestic violence), and that Mr. Sexton knowingly caused T.G. to believe that he would cause serious physical harm to her, her property, or her immediate family (aggravated menacing). *See* R.C. 2919.25(C) and R.C. 2903.21(A). T.G. testified as to Mr. Sexton's communications, which escalated in degree to death threats. She filed a police report seeking protection, which initiated the instant case, obtained a TPO, and pursued a CPO because she did not feel safe for herself or her family.

{¶51} The jury was free to believe the state's version of events and find that Mr. Sexton's threats to T.G. did not appear "hypothetical" since she hid in the woods and sought protection from the police and the courts. "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Furthermore, "if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." *State v. McFeely*, 11th Dist. Ashtabula No. 2008-A-0067, 2009-Ohio-1436, ¶ 81.

{¶52} Lastly, we note that the fact that Mr. Sexton's communications were electronic is inconsequential, particularly since it has become the most common method of communication. A threat can be made in a variety of forms, even via a third party. As the Cleveland Municipal Court aptly noted in denying a defendant's motion to dismiss a charge of aggravated menacing because he made the threat to the victim's employer and

15

not directly to the victim: "Now, at the dawn of the 21st Century, there are a multitude of methods by which criminal threats may be conveyed: phone, pager, e-mail, blog, Twitter, Facebook, and so forth. A threat made to and subsequently delivered by a third party to the intended victim can cause the same belief of potential harm as a direct threat, and is no less a crime." *Cleveland v. Hernandez*, 163 Ohio Misc.2d 37, 2011-Ohio-3394, 950 N.E.2d 1040, ¶ 9 (M.C.). So, too, can a threat made through a messaging application on one's phone to another person's messaging application on his or her phone be a direct threat.

{¶53} Mr. Sexton's second assignment of error is without merit.

{¶54} The judgment of the Chardon Municipal Court is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

16

Case No. 2021-G-0027